***********
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Taylor, and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award, except for minor modifications. Accordingly, the Full Commission affirms the Opinion and Award of Deputy Commissioner Taylor with modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act at all relevant times.
2. Defendant was self-insured during all relevant times to this matter.
3. An employee-employer relationship existed between the parties at all relevant times. Plaintiff was employed by defendant at its facility in Plymouth, North Carolina, from May 22, 1945, until December 1, 1952 and December 1, 1954, until he retired on June 2, 1986.
4. Plaintiff was last injuriously exposed to asbestos during plaintiff's employment with defendant, Weyerhaeuser Company, and plaintiff was exposed to asbestos for thirty (30) days within a seven month period, as set forth in N.C. Gen. Stat. § 97-57.
5. Subsequent to the hearing before the Deputy Commissioner, defendant stipulated that plaintiff does suffer from an occupational disease, asbestosis; further that he was diagnosed with asbestosis on May 29, 1998, by Dr. Darcey. Defendant further agrees that a member of the North Carolina Occupational Disease Panel confirmed this diagnosis and that these medical records will be stipulated into evidence for consideration by the Commission.
6. It is stipulated that Defendant manufactures paper and paper products such as paper for crafts, paper bags, boxes, and pulp for baby diapers. The approximate size of defendant's plant in Plymouth, North Carolina, is of a mile long. The entire facility is built on approximately 350 acres and encompasses about 20 different buildings. The newest building was built in the 1960's and the vast majority of the insulation used in the original construction of the buildings was asbestos containing. Steam producing boilers are used at the facility in Plymouth, North Carolina. In addition, there are hundreds of miles of steam pipes which were covered with asbestos insulation. The heat coming off the steam pipes is used, among other things, to dry the wet pulp/paper.
7. It is stipulated that plaintiff primarily worked as an insulation worker and bricklayer at Weyerhaeuser. He was exposed to asbestos while installing and ripping out asbestos-containing insulation materials all over the plant. He also removed asbestos gaskets from the pipes, pumps and valves which sometimes required grinding. The grinding would generate a fine dust. Plaintiff often worked in a small dusty room used to pulverize old asbestos materials, which were then used to make an asbestos mud for insulation around the boilers. Plaintiff was exposed to asbestos throughout his forty years of employment, and only used respiratory protection intermittently during the last ten years.
8. Plaintiff's income for the fifty-two (52) weeks prior to his retirement in June of 1986 was $31,464.98, which is sufficient to justify the rate of $404.40 under the North Carolina Workers' Compensation Act for the diagnosing year of 1997.
9. Plaintiff contends that he is entitled to an award of ten percent (10%) penalty pursuant to the provisions of N. G. Gen. Stat. § 97-12, and defendant agreed that should the claim be found compensable, defendant would agree by compromise to pay an amount of 5% of all compensation, exclusive of medical compensation, as an award of penalty pursuant thereto.
10. The parties agreed further that should plaintiff be awarded compensation, the undersigned may include language removing plaintiff from further exposure pursuant to N.C. Gen. Stat. § 97-62-5(b).
11. The parties further agreed that should the undersigned determine N.C. Gen. Stat. §§ 97-60 through 97-61.7 to be unconstitutional, additional testimony could be offered by the parties on the issues of loss of wage earning capacity and/or disability.
12. The parties agreed that the only contested issues for determination are:
 A. Does N.C. Gen. Stat. §§ 97-60 through 97-61.7
apply to plaintiff's claim for benefits, and regardless, are these statutes in violation of the Constitutions of the United States and North Carolina; and,
 B. What benefits, monetary and/or medical, is Plaintiff entitled to receive, if any?
13. The parties submitted for consideration by the undersigned the medical records and reports of plaintiff by the following physicians:
a. Dr. Dennis Darcey
b. Dr. Phillip Lucas
c. Dr. Gregory S. Pape
d. Dr. Fred Dula
e. Dr. E. Barnwell Black
f. Dr. E. P. Howath
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was exposed to asbestos-containing materials on a regular basis for more than thirty working days or parts thereof within seven consecutive months from 1954 until he retired in 1986.
2. The following medical records confirming the diagnosis of asbestosis were submitted for review of the undersigned by counsel for the parties:
 A. The medical report of Dr. Dennis Darcey of the Division of Occupational Environmental Medicine of Duke University dated December 9, 1997.
 B. It was the opinion of Dr. Darcey, and the Full Commission finds as fact, that plaintiff suffers from asbestosis and asbestos related pleural changes.
 C. Dr. Darcey, as part of his report, recommended that plaintiff undergo periodic monitoring for progression of asbestos related disease. Finally, in addition to his increased risk of developing asbestosis, plaintiff was and remains at an increased risk of developing lung cancer and mesothelioma as a result of his asbestos exposure, compared to non-exposed individuals.
 D. A CT scan and chest x-ray dated July 26, 1997, which supports a diagnosis of asbestosis.
 E. A CT scan and chest x-ray dated January 3, 2000, which had findings consistent with asbestosis.
 F. An advisory medical evaluation report written by Dr. Gregory S. Pape, a panel physician who examined plaintiff at the request of the North Carolina Industrial Commission on December 15, 1999.
 G. A medical report written by Dr. E. P. Howath, a physician employed by defendant, who examined plaintiff on June 21, 1984.
3. Plaintiff does suffer from asbestosis and asbestos-related pleural disease as a result of his many years of asbestos exposure while employed by defendant. Plaintiff would benefit from medical monitoring, evaluation and some treatment in the future as a result of his asbestosis and asbestos related pleural disease.
4. In I.C. No. 038168 and other cases before the Industrial Commission involving this same defendant, Weyerhaeuser stipulated that all the procedures used in defendant's asbestos medical surveillance program at its facility in Plymouth, North Carolina, were consistent with those outlined as part of the North Carolina Dusty Trades Program contained in N.C. Gen. Stat. §§ 97-60 through 97-61.7. These procedures were in place during plaintiff's employment at the Plymouth facility. The Industrial Commission takes judicial notice of the facts so stipulated.
5. In I.C. No. 038168 and other cases before the Industrial Commission involving this same defendant, Weyerhaeuser stipulated that the medical monitoring procedures used in its asbestos medical surveillance program were the same in all Weyerhaeuser plants in the State of North Carolina. The Industrial Commission takes judicial notice of the facts so stipulated.
6. In I.C. No. 038168 and other cases before the Industrial Commission involving this same defendant, Weyerhaeuser stipulated that the Weyerhaeuser facilities that Mr. Joseph Wendlick referred to in his deposition transcript, which had been stipulated into evidence, included the facilities in North Carolina. The Industrial Commission takes judicial notice of the facts so stipulated.
7. The Industrial Commission also takes judicial notice of the transcript of Joseph Wendlick's testimony at civil trial, the curriculum vitae of Joseph Wendlick and other documentation produced by defendant in discovery in I.C. No. 000344.
8. In I.C. No. 000344 and other cases before the Industrial Commission, Weyerhaeuser stipulated that all the procedures used in Weyerhaeuser's asbestos medical surveillance program at its facility in Plymouth, North Carolina, were consistent with those outlined as part of the North Carolina Dusty Trades Program which defendant contends is contained in N.C. Gen. Stat. § 97-60 through N.C. Gen. Stat. §97-61.7. Further, that these procedures were in place during plaintiff's employment at the Plymouth facility. The Industrial Commission takes judicial notice of the facts so stipulated.
9. In I.C. No. 000344 and other cases before the Industrial Commission, Weyerhaeuser stipulated that the medical monitoring procedures used in its asbestos medical surveillance program in all Weyerhaeuser plants in North Carolina were the same. The Industrial Commission takes judicial notice of the facts so stipulated.
10. In I.C. No. 000344 and other cases before the Industrial Commission, Weyerhaeuser stipulated that the Weyerhaeuser facilities to which Mr. Joseph Wendlick referred to in his deposition transcript which has been stipulated into evidence included the facilities in North Carolina. The Industrial Commission takes judicial notice of the facts so stipulated.
11. Defendant's Plymouth facility was found to have high levels of friable asbestos dust by its own Industrial Hygienist, Joseph Wendlick. As a result of Mr. Wendlick's findings, an asbestos medical monitoring program was initiated to comply with the dusty trade provisions of the N.C. Gen. Stat. § 97-60 through N.C. Gen. Stat. § 97-61.7.
12. Defendant, in lieu of participating in the North Carolina Dusty Trades Program as contained in N.C. Gen Stat. §§ 97-60 through 97-61.7, implemented its own asbestos medical surveillance program, which it asserts was consistent with the dusty trades statutory provisions. Defendant convinced the State of North Carolina that defendant need not be included in the state Dusty Trades Program since defendant's asbestos medical surveillance program served the same purpose. If defendant's medical surveillance program was in place during plaintiff's employment with defendant, then it is likely that plaintiff would have participated in the program by virtue of his employment with defendant.
13. Plaintiff may have relied upon defendant's representations to him and to his fellow employees that defendant's asbestos medical surveillance program would monitor his exposure to asbestos and would medically screen and monitor him for any signs of the development of asbestosis. In accordance with such program, plaintiff would have been seen by defendant's doctors on occasions throughout his employment with defendant, raising the possibility of discovery of plaintiff's asbestosis while he was still employed by defendant.
14. Plaintiff was likely not aware of his development of asbestosis until after he retired because defendant's medical surveillance program did not effectively monitor and track his development of asbestosis during his employment with defendant, that had defendant's program provided proper medical screening to inform plaintiff of his development of asbestosis, he would have been diagnosed with asbestosis while still in defendant's employ and thus subject to an order of removal and subsequent award. If plaintiff, to his detriment, relied upon the false representations of defendant in regard to its medical monitoring of plaintiff, then defendant may be equitably estopped from arguing that plaintiff is not entitled to the 104 week award pursuant to an order of removal. Additional evidence as to the elements of equitable estoppel would be required for the Commission to make a determination on the matter.
15. N.C. Gen. Stat. §§ 97-60 through 97-61.7 are constitutional.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Plaintiff contracted the occupational diseases of asbestosis and asbestos-related pleural disease as a result of his employment with defendant. N.C. Gen. Stat. §§ 97-53(24) and 97-62.
2. Plaintiff was last injuriously exposed to the hazards of asbestos dust while employed by defendant, and for as much as 30 days or parts thereof, within seven consecutive months, which exposure proximately augmented his asbestosis. N.C. Gen. Stat. § 97-57; Clark v. ITTGrinnell Industrial Piping, Inc., 141 N.C. App. 417, 539 S.E.2d 369
(2000); Haynes v. Feldspar Producing Co., 222 N.C. 163, 22 S.E.2d 275
(1942); Barber v. Babcock Wilcox Construction Company,101 N.C. App. 564, 400 S.E.2d 735 (1991).
3. The provisions of N.C. Gen. Stat. § 97-60 et seq. are constitutional.
4. N.C. Gen. Stat. § 97-61.5 provides in pertinent part that following a first hearing determination by the Industrial Commission that a claimant has asbestosis, based upon either medical evidence or by agreement of the parties, the Commission "shall by order remove the employee from any occupation which exposes him to the hazards of asbestosis . . ." and that upon removal the employee shall be entitled to "weekly compensation equal to sixty-six and two-thirds percent of his average weekly wages . . . which compensation shall continue for a period of 104 weeks."
5. The North Carolina Supreme Court determined that a retiree who is no longer employed by the asbestos-exposing industry is not entitled to an order of removal and the subsequent award because he no longer faces the possibility of exposure. See Austin v. General Tire, 354 N.C. 344,553 S.E.2d 680 (2001). However, the instant case may be distinguishable from Austin in that plaintiff was likely not aware of his development of asbestosis until after he retired because defendant's medical surveillance program did not effectively monitor and track his development of asbestosis during his employment with defendant. Had defendant's program provided proper medical screening to inform plaintiff of his development of asbestosis, he might have been diagnosed with asbestosis while still in defendant's employ and, thus, subject to an order of removal and subsequent award. Plaintiff may have, to his detriment, relied upon the representations of defendant in regard to its medical monitoring of plaintiff. Thus, defendant may be equitably estopped from arguing that plaintiff is not entitled to the 104 week award pursuant to an order of removal.
The doctrine of equitable estoppel is a means of preventing a party from asserting a defense that is inconsistent with its prior conduct.Purser v. Heatherlin Properties, 137 N.C. App. 332, 337, 527 S.E.2d 689,692 (2000), cert. denied, 352 N.C. 676, 545 S.E.2d 428 (2000) (citingGodley v. County of Pitt, 306 N.C. 357, 360, 293 S.E.2d 167, 169
(1982)). In particular, the rule is grounded in the premise that `it offends every principle of equity and morality to permit a party to enjoy the benefits of a transaction and at the same time deny its terms or qualifications.' Id. (quoting Thompson v. Soles, 299 N.C. 484, 487,263 S.E.2d 599, 602 (1980)). The law of estoppel applies in workers' compensation cases, and may be used to ensure coverage of a work-related injury. Id. (citing Carroll v. Daniels and Daniels Constr. Co., Inc.,327 N.C. 616, 620, 398 S.E.2d 325, 328 (1990).
Defendant's argument to the effect that estoppel was raised too late in this case is to no avail. In Purser v. Heatherlin Properties, supra, the doctrine was raised for the first time by the Court of Appeals itself exmeru moto.
In Belfield v. Weyerhaeuser Co., 77 N.C. App. 332, 335 S.E.2d 44
(1985), the North Carolina Court of Appeals held that equitable estoppel was appropriate to prevent an employer from raising a time limitation when the employer misrepresented to the employee that his rights under the Workers' Compensation Act were being exercised on his behalf by the employer. See Id. at 337, 47. The court stated:
 The commonest type of case is that in which a claimant, typically not highly educated, contends that he was lulled into a sense of security by statements of employer or carrier representatives that `he will be taken care of' or that his claim has been filed for him or that a claim will not be necessary because he would be paid compensation benefits in any event. When such facts are established by the evidence, the lateness of the claim has ordinarily been excused.
Id. (quoting 3 A. Larson, The Law of Workmen's Compensation, Section 78.45 at 15-302 through 15-305 (1983)). In the case before the Commission, defendant similarly seeks to argue that the 104 week award pursuant to an order of removal is not timely because plaintiff was not diagnosed until after he retired. However, this Commission will not permit defendant to use a time limitation defense if there is evidence suggesting that defendant's own medical surveillance program failed to detect plaintiff's development of asbestosis while he was still in defendant's employ, or failed to disclose to plaintiff that he had developed asbestosis when defendant had knowledge thereof. Such acts may inequitably prevent plaintiff from receiving an order of removal and subsequent award that he otherwise deserved. For these reasons, defendant may be equitably estopped from arguing as to the timeliness of plaintiff's order or removal and subsequent award. Evidence as to the elements of estoppel is required before the Commission can make a determination on the matter. Therefore, this issue must be held in abeyance pending the presentation of such evidence.
6. Plaintiff is entitled to payment of all medical expenses incurred or to be incurred as a result of his asbestosis and asbestos related pleural disease for so long as such examinations, evaluations and treatments tend to affect a cure, give relief or lessen his disability. N.C. Gen. Stat. § 97-25; N.C. Gen. Stat. § 97-59.
7. Plaintiff is entitled to undergo subsequent examinations as provided by law, pursuant to the provisions of N.C. Gen. Stat. §§ 97-61.1 etseq. and is further entitled to any additional benefits due to plaintiff which shall be determined after additional examinations and hearings.
8. Plaintiff's claim for attorney's fees from defendant on the ground that defendant unreasonably defended this claim pursuant to N.C. Gen. Stat. § 97-88.1 is hereby held in abeyance until the final award is issued in this claim.
9. This claim must be remanded to a deputy commissioner for further hearing on the issue of estoppel, and for further hearing (if necessary) following subsequent examinations as required under N.C. Gen. Stat. § 97-61 et seq. Plaintiff's eligibility for further compensation in addition to medical and any other issues in controversy are hereby held in abeyance pending the outcome of further hearings.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the undersigned enters the following:
 AWARD
1. Defendant shall pay all medical expenses incurred or to be incurred by plaintiff as a result of her asbestosis and asbestos related pleural disease for so long as such examinations, evaluations and treatments tend to affect a cure, give relief or lessen her disability.
2. Plaintiff shall undergo additional examinations as provided by law.
3. The Commission hereby retains jurisdiction in this matter to address the issue of permanent impairment, as plaintiff has not undergone the additional panel examination as required by law for such determination. Upon completion of such examinations, should the parties be unable to agree on what additional compensation, if any, is due, the parties may request a hearing before this Commission on this matter.
4. The Commission additionally retains jurisdiction in this matter to address the issue of equitable estoppel, as raised by plaintiff, as a means of awarding to plaintiff the 104 week award pursuant to N.C. Gen. Stat. § 97-61.5.
5. Defendant shall pay the costs of this proceeding.
 *********** ORDER REMANDING
This claim is hereby remanded to a deputy commissioner for further hearing (if necessary) following subsequent examinations as required under N.C. Gen. Stat. § 97-61 et seq. Plaintiff's eligibility for further compensation under the Act beyond the medical compensation awarded herein and any other issues in controversy including equitable estoppel are hereby held in abeyance pending the outcome of further hearings.
This 27th day of March 2003.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
DISSENTING:
 S/_______________ DIANNE C. SELLERS COMMISSIONER